UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVEN MARTINEZ,

      Petitioner,

  v.                                                17-CV-1049
                                                        14-CR-79
UNITED STATES OF AMERICA,                DECISION AND ORDER

      Respondent.
_____

Pending before this Court are *pro se* petitioner Steven Martinez's motions to correct his sentence under 28 U.S.C. § 2255, Docket Item 175,[1] and to reduce his sentence under 18 U.S.C. § 3582(c)(2), Docket Item 184. For the reasons that follow, both motions are denied.

## **BACKGROUND**

On January 26, 2017, Martinez pleaded guilty to Count 3 of the indictment, which charged a violation of 21 U.S.C. § 841(a)(1) (possession of 100 grams or more of heroin with intent to distribute). Docket Item 118. As part of his plea agreement with the government, Martinez acknowledged his status as a "career offender" under § 4B1.1(b)(1) of the United States Sentencing Guidelines ("Guidelines") based on two predicate convictions for violations of New York Penal Law § 220.16(1) (criminal possession of a controlled substance in the third degree: intent to sell). Docket Item 118 ¶ 8. The government and Martinez agreed that his Guidelines "sentencing range

---

[1] The citations are to the criminal docket, number 14-cr-79.

would be a term of imprisonment of 188 to 235 months, a fine of $15,000 to $1,000,000, and a period of supervised release of 3 years." *Id.* ¶ 11. The government and Martinez also agreed, under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, to a sentence of 216 months of imprisonment. *Id.* ¶ 12.

On May 22, 2017, this Court accepted the plea agreement and therefore sentenced Martinez to the agreed upon 216-month term of imprisonment. Docket Item 154. The Court entered judgment on May 31, 2017. Docket Item 157. Martinez did not appeal his conviction or sentence.

On October 16, 2017, Martinez moved to correct his sentence under 28 U.S.C. § 2255. Docket Item 175. The government responded on January 18, 2018. Docket Item 179. On August 2, 2018, Martinez replied. Docket Item 182. Among other things, Martinez argued that his defense attorney had been "ineffective" with regard to "issues about [Martinez's] past convictions." *Id.* at 2.

On October 15, 2018, Martinez moved to reduce his sentence under 18 U.S.C. § 3582(c)(2) based on the Supreme Court's decision in *Hughes v. United States*, 138 S. Ct. 1765 (2018). Docket Item 184. On November 16, 2018, the government responded, Docket Item 186, and on January 10, 2019, Martinez replied, Docket Item 193.

On February 14, 2019, Martinez filed a notice of supplemental authority citing *United States v. Townsend*, 897 F.3d. 66 (2d Cir. 2018). Docket Item 194. On August 31, 2019, Martinez filed a letter notifying the Court of *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018) and *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019). Docket Item 195. This Court then issued a text order allowing the government to

respond to Martinez's notices of supplemental authority, Docket Item 199, and the government did so on December 12, 2019, Docket Item 200.

## DISCUSSION

**I.  MOTION TO VACATE UNDER § 2255**

Martinez seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). He argues that his prior convictions do not constitute controlled substance offenses under Guidelines § 4B1.2(b) and that he therefore should not have been sentenced as a "career offender."

A defendant who has had "at least two prior felony convictions of either a crime of violence or a controlled substance offense" is sentenced as a "career offender" under the Guidelines. U.S.S.G. § 4B1.1(a). Guidelines § 4B1.2 defines a controlled substance offense as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

To determine whether a prior conviction under state law qualifies as a predicate offense, courts use one of "two possible methods: the categorical approach and the

3

modified categorical approach." *United States v. Jones*, 878 F.3d 10, 16 (2d Cir. 2017). "The categorical approach is confined to an examination of the legal elements of the state criminal statute to determine whether they are identical to or narrower than the relevant federal statute. If so, a conviction under the state statute categorically qualifies as a predicate offense." *Id.* (citation omitted). When a state statute "criminalize[s] multiple acts in the alternative," however, "courts may employ what is known as the modified categorical approach." *Id.* Under the modified categorical approach, a court may look to "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* (quoting *Mathis v. United States*, 136 S.Ct. 2243, 2249 (2016)).

In *Mathis*, the United States Supreme Court held that the "modified categorical approach" may not be applied to a statute "that enumerates various factual means of committing a single element." 136 S. Ct. at 2249-51. For example, in that case, the Court found that the different types of places listed in an Iowa burglary statute—"any building, structure, [or] land, water, or air vehicle," Iowa Code § 702.12 (2013)—were "not alternative elements, going toward the creation of separate crimes" but rather "la[id] out alternative ways of satisfying a single locational element." 136 S. Ct. at 2250. Thus, the Court held that the district court had erred in applying the modified categorical approach and inquiring what type of location the defendant had been convicted of unlawfully entering. *Id.* at 2250-51.

In *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), the Fifth Circuit applied *Mathis* and found that a prior conviction for sale of a controlled substance under Texas

4

law did not constitute a predicate offense under the Guidelines. Specifically, the court found that the Texas statute's definition of delivering—"actually transferring, constructively transferring, or *offering to sell*"—was broader than the relevant Guidelines offense, which did not criminalize mere offers to sell. *Id.* at 576 (emphasis added) (quoting *Lopez v. State*, 108 S.W.3d 293 (Tex. Crim. App. 2003)). And because those three ways of "delivering" under the Texas statute were "not alternative elements, going toward the creation of separate crimes" but rather "alternative ways of satisfying [the] single [delivery] element," the court could not use the modified categorical approach. *Id.* (alteration in original) (quoting *Mathis*, 136 S. Ct. at 2250).

Martinez has two prior convictions for violating New York Penal Law § 220.16(1), which provides that "[a] person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it." The first of these convictions was for "Criminal Possession of a Controlled Substance (With Intent to Sell), [in the] 3rd degree," Docket Item 163 at 31, while the second was for "*Attempted* Criminal Possession of a Controlled Substance (With Intent to Sell), in the 3rd degree," *id.* at 15 (emphasis added).

Martinez argues that "[i]n light of *Mathis*, NYPL 220.16(1) does not qualify as a controlled substance offense because one 'means' of accomplishing the element of the statute, namely sell, is broader than the definition of a controlled substance offense under U.S.S.G. § 4B1.2(b)." Docket Item 175 at 6. In addition to the Fifth Circuit's decision in *Hinkle*, Martinez relies on the Second Circuit's decision in *United States v. Savage*, 542 F.3d 959, 965 (2d Cir. 2008), which held that a conviction under a

5

Connecticut statute prohibiting sale of a controlled substance was not a predicate offense.

The government responds that Martinez's motion is barred by the appeal waiver in his plea agreement, and that, in any event, *Mathis* is inapplicable to his case. For the reasons that follow, this Court agrees with the government.

**A.    Martinez's Appeal Waiver**

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016). Thus, a defendant who has signed an appeal waiver typically is barred from arguing that his sentence was calculated improperly—so long as the plea was knowing and voluntary. This is true even if the law changes in a way that is favorable to the defendant. *See United States v. Harrison*, 699 F.3d 158, 159 (2d Cir. 2012) ("We have held that the 'cases foreclose the possibility that a plea agreement can be nullified by a change in law *after* the agreement is executed: A defendant's inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver.'" (emphasis in original) (internal quotation marks omitted) (quoting *United States v. Riggi,* 649 F.3d 143, 150 n. 7 (2d Cir. 2011))); *United States v. Haynes*, 412 F.3d 37, 39 (2d Cir. 2005) ("[A]ppeal waivers are applicable to issues arising subsequent to the plea agreement, including issues created by new judicial decisions. We noted that the possibility of changes in the law is simply one of the risks allocated by the parties' agreement.").

Here, Martinez agreed to waive the following rights:

> The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to

6

> appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

Docket Item 118 ¶ 18. What is more, he specifically agreed that

> [t]he defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

*Id.* ¶ 19.

Martinez now argues that the Guidelines were incorrectly calculated. Such an argument typically would be barred by the waiver in his plea agreement. But here there is an added wrinkle: Martinez also claims that his counsel was ineffective. Specifically, he contends that he "sent [his attorney] information about *Mathis*," but his attorney "never even tried to raise the argument." Docket Item 182 at 2.

A defendant who has signed an appeal waiver still may raise an ineffective assistance of counsel claim "challenging 'the constitutionality of the *process* by which he waived [his right to appeal].'" *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (emphasis and alteration in original) (quoting *United States v. Hernandez,* 242 F.3d 110, 113 (2d Cir. 2001)); *see also United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty plea [is] invalid and his appeal waiver [is] unenforceable if he prevail[s] on his claim that he received constitutionally ineffective

7

assistance of counsel during his plea proceedings"), *cert. denied*, 140 S. Ct. 55 (2019). That is because a claim "challenging the attorney's *advice* about [the defendant's] bargaining position . . . connect[s] the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct." *Parisi*, 429 F.3d at 139 (emphasis in original). Because Martinez proceeds *pro se*, the Court will liberally construe his claim as attacking his counsel's advice to him during the plea-negotiation process. *See id.*

### B.    Ineffective Assistance of Counsel Claim

To prove ineffective assistance of counsel, a defendant must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen,* 427 F.3d 164, 167 (2d Cir. 2005) (citations omitted) (quoting *Strickland v. Washington,* 466 U.S. 668, 688 (1984)). Here, Martinez argues that his attorney was ineffective for failing to consider and advise him about the impact of *Mathis* on his case.

To resolve Martinez's ineffective assistance of counsel claim, this Court must examine whether Martinez's convictions under New York Penal Law § 220.16(1) qualify as controlled substance offenses under the Guidelines. The Court need not definitively resolve this question, however. It need determine only whether, in advising Martinez that he qualified as a "career offender" notwithstanding *Mathis*, Martinez's defense attorney's performance "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. "In assessing the attorney's performance, [the Court] must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time

8

of counsel's conduct.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland,* 466 U.S. at 690).

At the time of Martinez's guilty plea, several courts had analyzed New York Penal Law § 220.16(1) under the categorical approach and held that a violation of that statute was a "controlled substance offense" under the Guidelines. *See United States v. Taylor*, 2012 WL 5991886, at *4 (S.D.N.Y. Nov. 30, 2012) (finding that "a violation of Penal Law § 220.16(1) . . . constitutes a 'controlled substance offense' for purposes of the career offender provision"), *aff'd sub nom. United States v. Fitzgerald*, 542 F. App'x 30 (2d Cir. 2013); *Wesley v. United States*, 2008 WL 2640477, at *2 (E.D.N.Y. July 3, 2008) (finding that § 220.16(1) was "clearly . . . a 'controlled substance offense' within the meaning of U.S.S.G. § 4B1.1(a)"). Other courts similarly had found that a violation of New York Penal Law § 220.39 (criminal sale of a controlled substance in the third degree)—which uses the same definition of to "sell" as § 220.16(1)—qualified as a "controlled substance offense." *See United States v. Melvin*, 628 F. App'x 774, 778 (1st Cir. 2015) (finding that "[u]nder the distribution prong of U.S.S.G. § 4B1.2(b), New York Penal Law § 220.39 is categorically a controlled substance offense that can trigger career offender status for sentencing purposes"); *Singletary v. United States*, 2014 WL 12691344, at *3 (N.D.N.Y. Apr. 14, 2014) (finding that § 220.39 "'criminalizes conduct that falls exclusively' within the Guidelines' definition of a [controlled substance offense]" (quoting *United States v. Reyes*, 691 F.3d 453, 458 (2d Cir. 2012)). And the Second Circuit had held that a violation of § 220.16(1) was a "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii), which has a definition similar to that of a "controlled substance

9

offense" under the Guidelines.[2] *United States v. King*, 325 F.3d 110, 114-15 (2d Cir. 2003); *see also United States v. Roman*, 464 F. App'x 32, 35 (2d Cir. 2012) (summary order) (finding that a "conviction for violation of New York Penal Law § 220.16(1) plainly qualifies as a felony drug offense under the categorical approach"). Moreover, because these cases used the categorical—not the modified categorical—approach, *Mathis* does not affect their analyses.

*Savage* and *Hinkle*—the cases on which Martinez relies for his argument that to "sell" under New York law is broader than under the Guidelines—are inapposite. Both those cases involved other states' statutes that criminalized mere *offers to sell* controlled substances as actual sales of controlled substances. *See Hinkle*, 832 F.3d at 572 (analyzing Texas Health & Safety Code § 481.112(a)); *Savage*, 542 F.3d at 965 (analyzing Conn. Gen. Stat. § 21a-277(b)). As the Second Circuit explained, "'a mere offer to sell, absent possession, does not fit within the Guidelines' definition' of a controlled substance offense." *Savage*, 542 F.3d at 965; *see also Pascual v. Holder*, 723 F.3d 156, 158 (2d Cir. 2013) ("Since a fraudulent offer to sell drugs lacks the intent to commit a substantive narcotics offense, it does not amount to a predicate controlled substance offense under the Guidelines."). Unlike those statutes, however, New York law "does not criminalize 'mere offers' (or fraudulent offers) to sell narcotics. Under New York law, the offer must be 'bona fide,' and a bona fide offer is one that is made

---

[2] 18 U.S.C. § 924(e)(2)(A)(ii) defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law."

10

with the intent and ability to follow through on the transaction." *Pascual*, 723 F.3d at 159.

Thus, this Court finds that Martinez's attorney was not ineffective in advising Martinez that he qualified as a "career offender" under the Guidelines. *Cf. Singletary*, 2014 WL 12691344, at *3 (finding that "there was no deficiency in defense counsel's decision not to challenge whether [the defendant]'s prior conviction under N.Y. Penal Law § 220.39 fell within § 4B1.2's definition of a 'controlled substance offense'"). In fact, before and after *Mathis*, a violation of New York Penal Law § 220.16(1) was and is a controlled substance offense under the Guidelines.

### C. Notices of Supplemental Authority

In his notices of supplemental authority, Martinez identifies three cases, all of which were decided *after* he pleaded guilty: *Townsend*, 897 F.3d. 66 (July 23, 2018); *Winstead*, 890 F.3d 1082 (May 25, 2018); and *Havis*, 927 F.3d 382 (June 6, 2019). Docket Items 194 and 195. In *Townsend*, the Second Circuit held that a violation of New York Penal Law § 220.31 for possession or distribution of a "controlled substance" did not constitute a "controlled substance offense" under the Guidelines. And in *Winstead* and *Havis*, the D.C. and Sixth Circuits held that Application Note 1 to § 4B1.2 impermissibly expanded the definition of "controlled substance offense" in § 4B1.2 to include inchoate offenses such as conspiracy and attempt.

Even assuming for the sake of argument that these cases applied favorably to Martinez's case, a subsequent change in the law does not nullify a defendant's appeal waiver. *See, e.g.*, *Harrison*, 699 F.3d at 159; *Haynes*, 412 F.3d at 39. As explained

above, the only way that Martinez could circumvent his waiver would be to show that his plea was not knowing and voluntary.

Because Martinez proceeds *pro se*, the Court reads his submissions "liberally and . . . interpret[s] [them] 'to raise the strongest arguments that they could suggest.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Thus, even though Martinez does not explicitly raise an ineffective-assistance-of-counsel claim in his notices of supplemental authority, this Court has nonetheless considered such an argument. But for the reasons that follow, that argument is unavailing.

As an initial matter, as the government observes, "[t]he predicate convictions at issue for [Martinez] are not for possession with intent to distribute a '*controlled substance*,' NYPL § 220.31, as in *Townsend*, but instead for possession with intent to distribute '*narcotics*,' § 220.16(1), a far more limited family of drugs and which are all federally controlled substances." Docket Item 200 at 2 (emphasis added). Moreover, even if *Townsend* raised an issue about Martinez's plea and sentence, *Townsend* was decided well after he pleaded guilty, and "counsel is not ineffective for failing to anticipate a change in the law." *Thompson v. United States*, 2010 WL 1537152, at *4 (S.D.N.Y. Apr. 14, 2010); *see also Roccisano v. United States*, 936 F. Supp. 96, 103 (S.D.N.Y. 1996) (rejecting the defendant's argument that "counsel's failure to anticipate *future* changes in the Sentencing Guidelines, both in the form of amendments and subsequent cases, constituted ineffective assistance of counsel" (emphasis in original)), *aff'd*, 152 F.3d 920 (2d Cir. 1998). For either and both of those reasons, *Townsend* is inapposite.

This Court agrees with Martinez that the D.C. and Sixth Circuits' decisions in *Winstead* and *Havis* support his argument that his second conviction under § 220.16(1) —for *attempted* possession of a controlled substance with intent to sell—does not qualify as a predicate offense. *Winstead* and *Havis* created a circuit split on whether "attempt" crimes can be predicates for career offender status, and the Second Circuit has yet to decide the issue. At the time of Martinez's guilty plea, however, all circuits to consider that issue had found that Application Note 1 appropriately designates "attempt" crimes as predicates for career offender status. *See United States v. Solomon*, 592 F. App'x 359, 361 (6th Cir. 2014); *United States v. Chavez*, 660 F.3d 1215, 1228 (10th Cir. 2011); *United States v. Mendoza-Figueroa*, 65 F.3d 691, 693 (8th Cir. 1995) (en banc). And "[c]ounsel's failure to make an argument that had been rejected by other federal appellate courts does not rise to the level of ineffective assistance." *Thompson*, 2010 WL 1537152, at *4.

For all those reasons, this Court finds that Martinez's counsel was not ineffective for failing to advise him regarding the arguments later accepted by the courts in *Townsend*, *Winstead*, and *Havis*. Thus, Martinez's appeal waiver bars him from challenging his sentence.

## II.   MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(C)(2)

Martinez argues that based on Amendment 782 to the Guidelines, which went into effect on November 1, 2014, he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2). He relies on *Hughes*, in which the Supreme Court held that "[a] sentence imposed pursuant to a [Rule 11(c)(1)(C)] agreement is 'based on' the defendant's

Guidelines range so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement." 138 S. Ct. at 1769.

18 U.S.C. § 3582(c)(2) states that:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Here, however, as the government observes, "Amendment 782 was effective long before Martinez was sentenced and does not represent a change in the Sentencing Guidelines." Docket Item 186 at 1. Martinez was sentenced using the 2016 Sentencing Guidelines, which incorporated Amendment 782. In other words, Martinez's Guidelines range has not been lowered since his sentence was imposed, and 18 U.S.C. § 3582(c)(2) therefore does not apply. His motion to reduce his sentence is denied.

## **CONCLUSION**

For the reasons set forth above, Martinez's motions to correct his sentence under 28 U.S.C. § 2255, Docket Item 175, and to reduce his sentence under 18 U.S.C. § 3582(c)(2), Docket Item 184, are DENIED. His petition in W.D.N.Y. Docket No. 17-cv-1049 is DISMISSED, and the Clerk of Court shall close that case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438 (1962).

Martinez must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

DATED: January 28, 2020
Buffalo, New York


　　　　　　　　　　　　　　　　　　*s/ Lawrence J. Vilardo*
　　　　　　　　　　　　　　　　　　LAWRENCE J. VILARDO
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE